# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Crystal Fountain Chapel Funeral Home, LLC,[1]    Case No.: 21-44190-lsg
et al,                                    Chapter 11, Subchapter V

       Debtors.                      Hon. Lisa S. Gretchko
                                         Jointly Administered

_____/

## SUBCHAPTER V PLAN OF REORGANIZATION FOR CRYSTAL FOUNTAIN CHAPEL FUNERAL HOME, LLC

PREPARED BY:

MICHAEL STEVENSON (P37638)
ERNEST M. HASSAN, III (P67815)
Stevenson & Bullock, P.L.C.
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906

---

[1] The Debtors in these jointly administered proceedings along with the last four digits of its federal tax id number are: James C. Lewis, Sr., LLC (1169)( Case No: 21-44189-lsg) and Crystal Fountain Chapel Funeral Home, LLC (0953)( Case No: 21-44190-lsg).

## INTRODUCTION

The debtor, Crystal Fountain Chapel Funeral Home, LLC (the "Debtor"), proposes this plan of reorganization (the "Plan") for the resolution of outstanding claims against and interest in the Debtor pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. 101-1532 (the "Bankruptcy Code"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I hereof. The Debtor is the proponent of the Plan under Bankruptcy code sections 1189(a) and 1129.

This Plan is should be viewed in conjunction with the plan of reorganization of James C. Lewis, Sr., LLC (Case No. 21-44189) (the "Companion Plan"). The Plan and the Companion Plan have substantially similar terms and similar treatment of creditors.

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

1.1 **Scope of Definitions; Rules of Construction:** For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code, the Bankruptcy Rules (as defined below) or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine. For purposes of the Plan, the following terms shall have the meaning set forth below, unless the context requires otherwise.

1.2 **Definitions:**

1.2.1 "Administrative Claim" means Allowed Claims for costs and expenses of administration of this Chapter 11 case allowed under §§503(b) and 507(a)(2) of the Bankruptcy Code.

1.2.1 Administrative Claims Bar Date" means the deadline for filing requests for payment of allowed Administrative Claims (other than Professional Fee

claims), which shall be the first Business Day that is sixty (60) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

1.2.2 "<u>Administrative Creditor</u>" means a holder of an Administrative Claim.

1.2.3 "<u>Allowed Claim</u>" or "<u>Allowed Interest</u>" means any Claim for which a proof of claim has been filed prior to the Bar Date or that is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely filed; or any claim as to which an objection has been resolved by a Final Order of the Court establishing the priority and amount of such claim.

1.2.4 "<u>Article</u>" refers to a specific article of this Plan.

1.2.5 "<u>Avoidance Actions</u>" means Causes of Action of the Debtor, estate or the Reorganized Debtor arising under Chapter 5 and any related sections of the Bankruptcy Code, including without limitation, §§ 502, 510, 541, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Cause of Action.

1.2.6 "<u>Ballot</u>" means the official bankruptcy form no. 314 adopted for this Case or a document prepared to substantially conform to same which was distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.7 "<u>Bankruptcy Code</u>" or "<u>Code</u>" means the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 , as amended (11 U.S.C. §§101, <u>et seq.</u>).

1.2.8 "<u>Bankruptcy Court</u>" or "<u>Court</u>" means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and any court having jurisdiction to hear appeals therefrom.

1.2.9 "<u>Bankruptcy Rules</u>" or "<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, and any amendments thereto.   To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.2.10 "Bar Date" means the date established by the Bankruptcy Court for the filing of any Claims.

1.2.11 "Business Day" means any day, other than a Saturday, Sunday or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.2.12 "Case" means, the bankruptcy case currently pending before the Bankruptcy Court entitled *In re Crystal Fountain Chapel Funeral Home LLC*, Case No. 21-44190.

1.2.13 "Cases" means, collectively, the bankruptcy cases currently pending before the Bankruptcy Court entitled *In re Crystal Fountain Chapel Funeral Home LLC*, Case No. 21-44190, and *In re James C. Lewis, Sr., LLC*, 21-44189.

1.2.14 "Causes of Action" means all Claims, rights and causes of action belonging to the Debtor and upon confirmation, the Debtor, including without limitation, Avoidance Actions and any related Claims and actions arising under such sections of the Bankruptcy Code by operation of law or otherwise; any Claims or Causes of Action against any third parties and any and all proceeds of the foregoing.

1.2.15 "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.2.16 "Claimant" means any individual or entity which has a valid Claim as defined herein.

1.2.17 "Class" means a class of holders of Claims or Interests described in Article IV of this Plan.

1.2.18 "Confirmation Date" means the date upon which the Bankruptcy Court shall enter an order confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.2.19 "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by the Debtor.

1.2.20 "Confirmation Order" means the Order entered confirming this Plan pursuant to §1129 of the Code.

1.2.21 "<u>Contested Claim</u>" or "<u>Contested Interest</u>" means any Claim or Interest as to which the Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.2.22 "<u>Creditor</u>" means any holder of a Claim against the Debtor.

1.2.23 "<u>Debtor</u>" means Crystal Fountain Chapel Funeral Home, LLC.

1.2.24 "<u>Debtors</u>" means, collectively, Crystal Fountain Chapel Funeral Home, LLC and James C. Lewis, Sr. LLC.

1.2.25 "<u>Debtor-In-Possession</u>" means the Debtor in its capacity as debtor-in-possession as term as defined in the Bankruptcy Code in the Bankruptcy Case.

1.2.26 "<u>Debtors-In-Possession</u>" means the Debtors in their capacities as debtors-in-possession as term as defined in the Bankruptcy code in the Bankruptcy Cases.

1.2.27 "<u>Disallowed</u>" means (a) a Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is listed in the Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or Interest or any portion thereof that is not listed in the Debtor's Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.28 "<u>Effective Date</u>" means the date that is one (1) day after the Confirmation Order becomes a Final Order.

1.2.29 "<u>Estate</u>" means the bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

1.2.30 "<u>Final Order</u>" means an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed; or (iii) an appeal has

been timely taken but such order has not been stayed within fourteen (14) days after the filing of such appeal.

1.2.31 "Governmental Unit" has the meaning ascribed to it in section 101(27) of the Bankruptcy Code.

1.2.32 "Holder" means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.33 "Impaired" means a Claim treated under this Plan, unless the Plan:

    A.    leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

    B.    notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default—

    1.    cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

    2.    reinstates the maturity of such Claim or Interest as such maturity existed before such default;

    3.    compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

    4.    does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.2.34 "Insider" shall mean a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of the Debtor or a corporation or entity in which an Insider (as defined above) of the Debtor is an Insider.

1.2.35 "Interest" means an equity interest in the Debtor as defined in § 101(16) of the Code.

1.2.36 "Interest Rate" means (a) with respect to Claims entitled to interest under §506 of the Bankruptcy Code and this Plan and having an applicable contractual rate of interest evidenced by a writing signed by an executive officer of the Debtor the lowest rate of interest provided in such contract, without regard to any default by Debtor, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, the applicable statutory rate for such Claims or, if no statutory rate exists, 1.0% per year, or (c) with respect to (a) or (b) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.37 "Lien" means any security interest, lien, tax lien, mortgage, encumbrance, common law or statutory lien, charge against, or an interest in property to secure payment of a debt or performance of an obligation. "Lien" shall be defined as, and interpreted in, as broad a manner as possible.

1.2.38 "Petition Date" means May 12, 2021 the date that the Debtor filed the Chapter 11 voluntary petitions which commenced the Case.

1.2.39 "Person" has the meaning given to it under § 101(41) of the Bankruptcy Code.

1.2.40 "Plan" means this Plan, as it may be altered, amended or modified from time to time.

1.2.41 "Priority Claim" means a Claim under or entitled to priority under any of the following sections of the Code: §§507(a)(4), 507(a)(5), or 507(a)(8).

1.2.42 "Pro Rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class, unless the Plan expressly provides otherwise.

1.2.43 "Professional Fees" means the fees and reimbursement for disbursements owed to attorneys, accountants, or other professionals whose employment has been approved by the Bankruptcy Court.

1.2.44 "Proponent" mean the Debtor, the proponent of this Plan.

1.2.45 "Section" refers to a specific section or subsection of this Plan, unless otherwise set forth herein.

1.2.46 "<u>Secured Claim</u>" means a Claim secured by a Lien on property in which the estate has an interest but only to the extent of the value of the Creditor's interest in the estate's interest in the property as of the Petition Date.

1.2.47"<u>Subchapter V Case</u>" means the above titled bankruptcy proceeding filed by Debtor as a small business debtor and subject to Bankruptcy sections 1181-1195.

1.2.48"<u>Subchapter V Trustee</u>" means the trustee appointed in this Subchapter V Case pursuant to section 1183.

1.2.49 "<u>Unimpaired</u>" or "<u>Unimpaired Claim</u>" means a Claim treated under this Plan that leaves unaltered the legal, equitable, and contractual rights of such Claim.

1.2.50 "<u>Unsecured Claim</u>" means a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

1.2.51 "<u>United States Trustee</u>" means the United States Trustee for Region 9.

1.3 **<u>Rules of Interpretation</u>:** For purposes of the Plan:

1.3.1 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented.

1.3.3 The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4 Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.5 The rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.3.6 The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous; however, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4 **Computation of Time**: In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern. If the Effective Date or any other date on which a transaction or distribution may occur under the Plan occurs on a day that is not a Business Day, the transactions or distributions contemplated by the Plan to occur on such day shall instead occur on the next business day following such non-business day.

1.5 **Governing Law**: Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

1.6 **Exhibits**: All exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court website for a fee at http://ecf.mieb.uscourts.gov. The exhibits may also be requested, in writing, from the Debtors' counsel. All exhibits may be revised prior to the Confirmation Date by the filing of the revised exhibits with the Bankruptcy Court, so long as the revised exhibits are substantially in conformance with the terms of this Plan. The exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the exhibits.

1.7 **Estimates of Claims**: Unless expressly stated otherwise, nothing herein shall be deemed an admission by the Debtor or to otherwise prejudice the Debtor in any claim objection or Cause of Action. All estimates of Causes of Action and claims amounts listed in this Plan are current estimates only. All claim amounts and classifications remain subject to the Claims objection process as set forth herein.

## ARTICLE II

## BRIEF HISTORY OF BUSINESS OPERATIONS AND DEBTOR'S LIQIDATION ANALYSIS

2.1    **History of the Debtor.** On May 12, 2021 the Debtors each filed voluntary petitions (the "Petition Date") in this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").

James C. Lewis, Sr., LLC continues to manage and operate its businesses as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Crystal Fountain Chapel Funeral Home, LLC continues to manage and operate its business as debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

James C. Lewis, Sr., LLC owns the real property commonly known as 967 W. Michigan Avenue, Ypsilanti, MI 48197 (the "Real Property") from which Crystal Fountain Chapel Funeral Home, LLC operates.   Both James C. Lewis, Sr., LLC and Crystal Fountain Chapel Funeral Home, LLC have common creditors, equity interests, and has interrelated business interests regarding the operation of the funeral home located at the Real Property.

2.2    **Liquidation Analysis.** The Debtor's Liquidation Analysis is attached as Exhibit A. In the event the Debtor's Plan is not accepted by the Creditors or is not otherwise confirmed by the Bankruptcy Court, the Debtor believes unsecured creditors will be paid less than what they would receive under the Plan.

2.3    **Risks, conditions and assumption in Liquidation Analysis.** All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of its assets, except where noted to the contrary. In establishing the values, Debtor has considered the size, age, physical condition and location of the Assets, in addition to the need for certain additional capital requirements.

# ARTICLE III

## TREATMENT OF CLAIMS NOT SUBJECT TO CLASSIFCATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

## ADMINISTRATIVE AND PRIORITY CLAIMS

Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below:

3.1     **GROUP I.** The Claims of Group I shall consist of all Administrative Claims, including any taxes that qualify as Administrative Claims. The Allowed Claims of this Group shall be paid the full amount of their Claims on such date as may be mutually agreed upon by the Debtor and the particular claimant, or, if no such date is agreed upon, the later of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business from the Debtor to such Administrative Creditor, or (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving the Debtor's payment of such expenses. All Professional Fees that are the subject of pending fee applications before the Bankruptcy Court, or that have already been allowed by the Bankruptcy Court but which remain unpaid as of the Effective Date, unless otherwise agreed by such professionals, shall be paid in full, in cash, (i) on the Effective Date, or (ii) within seven (7) days after a Final Order of the Bankruptcy Court has been entered authorizing their payment, whichever is later. Payments regarding amounts to be paid to the U.S. Trustee are governed by Article XI.

The Debtor has estimated Administrative Claim expenses as follows (i) Stevenson & Bullock, P.L.C. - $65,000.00; (ii) Subchapter V Trustee - $10,000.00; and (iii) Bultynck & Co., PLLC - $2,000.00.

> The Bar Date for asserting any Administrative Claim is sixty (60) days after the Effective Date. Any Administrative Claim first asserted after the Bar Date shall be deemed Disallowed and shall not be entitled any payment under this Plan. The objection procedures in Article X of this Plan are applicable to any filed Administrative Claim. This section does not apply to the U.S. Trustee.

3.2     **GROUP II**. The Claims of Group II shall consist of all Allowed Claims, if any, that are entitled to Priority under § 507(a)(8) of the Code. The

Internal Revenue Service ("IRS") is the only estimated Allowed Claim that is entitled to Priority under § 507(a)(8).

3.2.1 The IRS Allowed Claim entitled to Priority under § 507(a)(8) in the amount of $300.00 shall be paid on or before the Confirmation Order becomes a Final Order.

3.2.1 Any payments made to Allowed Claims of Group II shall first be applied to the trust fund portion of taxes, including any trust fund recovery penalties.

3.2.2 Creditors with claims that are entitled to Priority under § 507(a)(8) other than the IRS Allowed Claim treated above, will receive payments from the Debtor and be paid in full within sixty (60) months of the Petition Date with accrued interest at 4.0% annually, beginning on the Effective Date, and accruing interest until paid in full. Payments shall be in equal monthly installments.

3.2.3 The Debtor shall have the right to challenge any Priority Claim through the claim objection process set forth in Article X, which challenge may include but is not limited to a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtor's personal property that may or may not have been made by the respective taxing authority.

3.2.4 To the extent that an objection is filed, the Debtor shall not be obligated to pay any Allowed Priority Claim until a determination of the amount of the Priority Claim has been made by the Bankruptcy Court. Payments to these Priority Claims that are ultimately allowed shall commence on the first business day of the calendar quarter following the Court's final determination of the allowability of all of the Claims in this Class.

3.2.5 Until such time as the Priority Claim has been fully and indefeasibly paid, the Priority Claimant shall retain any and all Liens that it may have which shall remain in full force and effect, with the same Priority and to the same extent that existed on the Petition Date. Upon payment in full of the Priority Claim, the Priority Claimant shall release and extinguish all Liens and execute any and all documents reasonably requested by the Debtor to memorialize same.

3.2.6 Provided that the Debtor is making all payments required under the Plan, any taxing authority shall not pursue any further collection efforts, including the issuance of levies, seizure of assets, imposition of trust fund recovery penalties and assessments and filing of Liens against any party who may also be

liable to pay or satisfy Tax Claims. If Claimants of this Group seize assets or collect funds from any non-debtor party, the Debtor may reduce its payments under the Plan, in its discretion, by the amount of funds seized.

**Administrative and Priority Claims are treated the same in the Companion Plan filed by James C. Lewis, Sr., LLC. The only difference is that the Internal Revenue Service does not hold an estimated claim under § 507(a)(8) in the case of James C. Lewis, Sr., LLC.**

## ARTICLE IV

## DESIGNATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Plan divides Claims and Interests into classes and treats them as follows:

**Class I:**

**NOTE: The Subchapter V Trustee, Counsel for James C. Lewis, Sr., LLC and Crystal Fountain Chapel Funeral Home, LLC and Huntington National Bank ("Huntington") had extensive negotiations regarding the treatment of Huntington's Claims prior to the filing of this Plan and the Companion Plan. The below treatment has been preliminarily approved by Huntington. At the time of filing the plans, Huntington is seeking final approval from the Small Business Administration of the below terms.**

4.1     This Class shall receive payments and treats the allowed secured claim of Huntington National Bank ("Huntington"). Huntington shall possess an allowed secured claim in the amount of $155,000.00 ("Secured Amount") against the property located at 967 W. Michigan Ave, Ypsilanti, MI 48197 ("Real Property"). Huntington asserts the claim without regard to the value of the Real Property is $417,120.56. The fair market value of the Real Property is $155,000.00. Huntington's remaining claim besides the Secured Amount is unsecured and will be treated in Class II.

4.1.1   The Secured Amount will be paid in the following manner:

        a. Payment by or on behalf of the Debtor, in good and sufficient funds of $50,000.00 when the Confirmation Order becomes a Final Order, made payable to "The Huntington National Bank" ("Initial Payment").

b. Payments by or on behalf of the Debtor, in good and sufficient funds in the amount of $3,179.57 per month ("Monthly Payments") for 36 months, which includes interest of 5.5%. Monthly payments will start on the 1st of the first month after the Confirmation Order becomes a Final Order.

c. Initial Payment and Monthly Payments will be sent to the following address:
The Huntington National Bank
c/o Sue McClary, VP financial Recovery Group
101 N. Washington Ave. (SAG554)
Saginaw, MI 48607

4.1.2 There is no penalty for prepayment.

4.1.3 In the event Huntington does not timely receive the Initial Payment or Monthly Payments, Huntington shall serve upon the Debtor by First Class Mail and by email a Notice of Non-Compliance that permits ten (10) days from the date of service of the Notice of Non-Compliance in which to cure the alleged non-compliance (the "Cure Period"). The failure of Debtor to cure the non-compliance within the Cure Period is an event of default (a "Default").

4.1.4 All notices to the Debtor shall be sent to the following address: Elder James C. Lewis at 4004 Textile Rd, Ypsilanti, MI 48197. Also, emailed to eldermelvinlewis@aol.com.

4.1.5 Huntington Bank shall send an additional notice of default via email to the following email addresses: mstevenson@sbplclaw.com and ehassan@sbplclaw.com.

4.1.6 In the event the Default is not cured. The case of James C. Lewis, Sr., LLC ("Liquidating Debtor") will be reopened upon motion by Huntington and a liquidating trustee shall administer the Real Property for the benefit of Huntington and make distributions to Huntington for application to Huntington's Secured Amount.

4.1.7 Upon the reopening of the case, Richardo Kilpatrick shall be appointed the Liquidating Trustee of the Estate of James C. Lewis, Sr., LLC ("Liquidating Trustee"). The Liquidating Trustee shall be deemed the Estate's sole representative in accordance with section 1123 of Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan and the Companion Plan,

including, without limitation, the powers of a Trustee under section 704 and 1106 of the Bankruptcy Code. On the reopening of the James C. Lewis, Sr., LLC bankruptcy case, all of James C. Lewis, Sr., LLC's rights, titles and interests in and to the real property located at 967 W. Michigan, Ypsilanti, MI 48197 ("Real Property") shall re-vest in the Liquidating Debtor to be operated and distributed by the Liquidating Trustee pursuant to the provisions of the Plan and Companion Plan. Subject to the availability of funds, the Liquidating Trustee shall have full responsibility for maintaining and preserving the Real Property until all disbursements are made in accordance with the provisions of the Plan.

4.1.8 The Liquidating Trustee together with his representatives and professionals, shall administer the Plan and Companion Plan with respect to the Liquidating Debtor. In such capacity, the powers of the Liquidating Trustee shall include any and all powers appropriate to implement the plan with respect to the Liquidating Trustee shall include any and all powers appropriate to implement the Plan with respect to the Liquidating Debtor and (i) to administer, and cause the Liquidating Debtor to liquidate and distribute, the Real Property, and the proceeds thereof to Huntington. The Liquidating Trustee's powers shall include the power to employ professionals, including attorneys, financial advisors and expert witnesses. The Liquidating Trustee may employ professionals previously employed by the Debtor or the committee, and employment of such processionals by the Liquidating Trustee shall not be determined to be a conflict of interest. The Liquidating Trustee shall further have the power to acquire such insurance policies as may be appropriate in connection with its engagement as Liquidating Trustee, and to charge such polices as expenses of administration of the Liqidating Debtor.

4.1.9 The Liquidating Trustee Expenses after reopening the case of James C. Lewis, Sr., LLC shall be funded from the sale of the Real Property.

4.1.10 On the entry of an Order Reopening the bankruptcy case of James C. Lewis, Sr., LLC for Default by the Debtor, the authority, power and incumbency of the persons then acting as directors and officers of the Debtor shall be terminated and they shall be deemed to have resigned, and (ii) the Liquidating Trustee shall have the powers of the sole Director and sole officer of the Liquidating Debtor.

4.1.11 After the Liquidating Debtor has fully administered the Real Property and the Liquidating Debtor has made the distributions, the Liqidating Trustee shall allow the Liquidating Debtor to dissolve in accordance with the laws of the State of Michigan.

4.1.12 Discharge and termination of the Liquidating Trustee shall automatically occur at such time as the Real Property has been liquidated and all net proceeds have been distributed to Huntington.

4.1.13 Huntington shall release its mortgage lien and any other encumbrances on the Real Property upon the completion of the payments as described in class I and Class II of this Plan ("Payments"). Upon completion of the Payments the Debtor shall have free and clear title to the Real Property.

**This Class is impaired.**

**Huntington National Bank is treated the same in the Companion Plan filed by James C. Lewis, Sr., LLC.**

**Class II:**

4.2     Class II consists of the Holders of Allowed Unsecured Claims. Debtor shall pay $2,000.00 per year as set forth in the Plan Projections set forth in Exhibit B, the payments will be due on September 30, 2025 and September 30, 2026. Neither pre-confirmation interest nor post-confirmation interest on Allowed Class II Claims will be paid. A Creditor in this class shall receive a Pro Rata distribution incident to its allowed general unsecured claim.

4.2.1     There is no penalty for prepayment of Allowed Unsecured Claims.

**This Class is impaired.**

**The Allowed Unsecured Claims are treated the same in the Companion Plan filed by James C. Lewis, Sr., LLC.**

**Class III:**

4.3     This Class shall consist of the Interests of the equity security holders in the Debtor. Equity Security Holders shall retain their interests in the Debtor and Reorganized Debtor.

**This Class is Not Impaired.**

**The Equity Security Holders are treated the same in the Companion Plan filed by James C. Lewis, Sr, LLC.**

## ARTICLE V

## MEANS OF EXECUTION OF THE PLAN

5.1 **The Debtor:** On the Effective Date, all of the Debtor's rights, titles, and interests in and to all Assets shall re-vest in the Debtor to be operated and distributed by the Debtor pursuant to the provisions of this Plan.

5.2 **Discharge of Subchapter V Trustee**: After the initial payment to creditors and achieving substantial consummation of the Confirmed Plan, the Reorganized Debtor shall promptly file a notice of substantial consummation of the Plan. The role of the Subchapter V Trustee shall terminate, and the Subchapter V Trustee shall be discharged, pursuant to section 1183(c)(1) of the Bankruptcy code after the filing of the notice of substantial consummation of the Plan and the Trustee notice of distribution.

5.3 **Professional Fees of the Debtor**: Any services performed or expenses incurred by any professional on behalf of the Debtor with respect to this Case after the Confirmation Date, shall not be subject to the prior review and approval of the Bankruptcy Court and, notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Fed. R. Bankr. P. 2016, after the Confirmation Date, no professional shall be required to disclose payments from the Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses arising after the Confirmation Date shall be billed directly to the Debtor.

5.4 **Litigation**: Unless expressly waived or settled in the Plan or Confirmation Order, all Causes of Action, including but not limited to, Avoidance Actions, are expressly reserved, whether or not specifically listed in this Plan, Disclosure Statement or Debtor's bankruptcy schedules filed with the Court, as amended. Upon the Effective Date, all Causes of Action, including but not limited to, Avoidance Actions, are expressly vested in the Reorganized Debtor. No preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action as a consequence of the Confirmation, the Effective Date or consummation of the Plan.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.1 **Plan projections**: The Debtor has attached as Exhibit B, a summary of post-confirmation financial projections for the life of the Plan.

6.2    **Voting and Acceptance of Plan**

6.2.1 **Deemed Acceptance if No Votes Cast**. If no Holders of Claims eligible to vote in a particular class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such claims in such Class.

6.2.2 **Elimination of Vacant Classes**. Any Class of Claims that does not have a Holder of an allowed Claim or a Claim temporarily allowed by the Bankruptcy Court as of the date of the Confirmation hearing shall be deemed eliminated from the plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

6.3    **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor. There are no Classes that are conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.

6.4    **Termination of Subchapter V Trustee.**

6.4.1 If the Plan is confirmed under section 1191(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code Section 1183 through substantial confirmation of the Plan at which point his services shall terminate.

6.4.2 If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until he has performed such duties as are described in sections 1183 and 1194(b) and such other duties as it may have been assigned by the Bankruptcy court prior to the Effective Date.

6.5    **Pre-Effective Date Injunctions or Stays.** All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

6.6 **Avoidance Actions.** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor.

6.7     **Change of Address**:  In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor or Subchapter V Trustee, as applicable, of any change in address. Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court. If the payment is not negotiated within three (3) months after being mailed, it shall be void and the Reorganized Debtor shall have no further obligation to such Creditor.

6.8     **Presumed Rejection of the Plan**:  There are no Classes that are conclusively presumed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.

6.8     **Voting Classes**:  Classes I and II under Article IV of the Plan are Impaired under the Plan, and Holders of Claims or Interests in such Classes shall be entitled to vote to accept or reject the Plan.

## ARTICLE VII

## EXECUTORY CONTRACTS

7.1     **Rejection and Repudiation of Executory Contracts and Unexpired Leases.** On the Effective Date all executory contracts and unexpired leases shall be deemed accepted pursuant to Bankruptcy Code section 365 other than those executory contracts or unexpired leases that: (a) previously were assumed or rejected by the Debtor; (b) are otherwise addressed in the Confirmation Order or Plan; or (c) are the subject of a motion to reject such executory contracts or unexpired leases, as applicable, that is pending on the Effective Date, regardless of whether the requested effective date of such rejection is on or after the Effective Date.

7.2     **Claims Based on Rejection or Repudiation of Executory Contracts and Unexpired Leases.** If the rejection or repudiation of an executory contract or unexpired lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its property, or any of its interests in property as agent, successor or assign , unless a Proof of Claim is filed and served upon Debtor's counsel within thirty (30) days after the earlier of (i) the Effective Date and (ii) the effective date of rejection or repudiation of the executory contract or unexpired lease. The Debtor shall give notice of the bar date established by this Plan to the non-Debtor counterparties to the executory contracts and unexpired leases by service of the plan, the Confirmation Order, or otherwise. Unless otherwise provided herein, the Debtor shall object to such claims on or before the Claims Objection Bar Date.

7.3 **Objections to Rejection Claims.** The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article X

## ARTICLE VIII

## MODIFICATION OF THE PLAN

8.1     The Debtor may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court. After confirmation, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Order of Confirmation or otherwise modify the Plan.

8.2     If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtor proposes a material modification affecting all Creditors, then such modification will be governed by § 1127 of the Bankruptcy Code.

## ARTICLE IX

## EFFECT OF CONFIRMATION

9.1     **Discharge under 1191(a)**: In the event this Plan is confirmed under section 1191(a) of the Bankruptcy Code, except as otherwise explicitly provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims. Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), in each case whether or not a Proof of Claim is filed or deemed filed pursuant to Bankruptcy Code Section 501.

9.2     **Discharge under 1192(b)**: In the event this Plan is confirmed under section 1191(b) of the Bankruptcy Code, as soon as practicable after completion of the Debtor's Payments due during the first three (3) years of the Plan, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) and allowed under section 503 of the Bankruptcy Code (the "Discharge Order"). Notwithstanding the forgoing, the court shall not grant the Debtor a discharge of any

debt for which the last payment is due after the first three (3) years of the plan, or (ii) a debt of the kind specified in section 523(a) of the Bankruptcy Code.

9.3 **Effect of Discharge:** Upon the Effective Date if the Plan is confirmed under 1191(a) or upon entry of a Discharge Order if the Plan is confirmed under 1191(b), and except as otherwise provided in the Plan or the Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtor, or its respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts and liabilities against the Debtor pursuant to Bankruptcy Code sections 524 and 1192, and such discharge will void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged debt.

9.4 **Injunction:** Except as otherwise provided in the Plan, from and after the Effective Date, all persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein precludes such persons or entities from exercising their rights pursuant to and consistent with the terms of this Plan and the Confirmation Order.

9.5 **Setoffs:** Except as otherwise expressly provided for in the Plan, the Debtor pursuant to the Bankruptcy Code (including § 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor, as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor-in-interest to Holder to the extent that the Holder takes such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor-in-interest), to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to

the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor of any Claims, rights, setoff rights and Causes of Action that the Debtor may possess against such Holder. The Debtor shall not be required to make any distributions to the Holder of any Allowed Claim to the extent that the Debtor asserts setoff rights against such Holder until after entry of a Final Order resolving such setoff rights. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to § 553 of the Bankruptcy Code or otherwise.

## ARTICLE X

## OBJECTIONS TO CLAIMS AND INTERESTS

10.1  **Timing of Objections.** The Debtor or Reorganized Debtor may object to the allowance of any claim, or the extent, validity and enforcement of any security interest, whether listed on the schedules filed by Debtor or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of Claim, or (b) six (6) months after the Effective Date.

10.2  Parties in interest may object to any Lien as part of the Claims objection process.

## ARTICLE XI

## UNITED STATES TRUSTEE FEES

11.1  The Debtor will pay to the Office of the United States Trustee the appropriate sum pursuant to 28 U.S.C. § 1930(a)(6) for all quarters completed for which payment is due. The Debtor will pay all quarters due within fourteen (14) days after the Effective Date and shall continue to remit quarterly fee payments based on all disbursements until the Case is closed by Order of the Court. The fees due to the United States Trustee are charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, are entitled to priority under § 507(a)(2) of the Bankruptcy Code, and are payable until such time as the case has been converted, dismissed, or closed by the Bankruptcy Court.

11.2 The Debtor will continue to remit to the Office of the United States Trustee all appropriate post-confirmation monthly reports for the relevant time periods.

11.3 After the Case is closed, to the extent any monthly reports have not been timely provided or fees not paid in full, the Case may be re-opened by the Office of the United States Trustee to file such motions or take such action as appropriate to be provided with such reports and fees owed.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1 Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes until the entry of a final decree closing this case:

A. To determine all objections to the allowance of Claims;

B. To approve or disapprove any compromise by the Reorganized Debtor of any Claim;

C. To determine all disputes arising under the Plan, including satisfaction of payments under the Plan or any dispute over any action taken by the Reorganized Debtor, and to enforce, interpret and administer the terms and conditions of the Plan;

D. To determine any applications for allowance of compensation and reimbursement of expenses as may be required for pre-confirmation services;

E. To determine any applications for rejection, assumption, or assignment of executory contracts and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts pursuant to the Plan;

F. To determine any applications, adversary proceedings, and contested and litigation matters pending in the case at the Confirmation Date or thereafter filed;

G.    To determine any applications on file for approval of settlement agreements and entering and enforcing all appropriate orders in connection therewith;

H.    To modify any provisions of the Plan pursuant to the Rules, the Code and provisions of the Plan;

I.    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

J.    To determine such other matters provided for in the Confirmation Order as may, from time to time, be authorized under the provisions of the Code or any applicable law;

K.    To enforce all orders, judgments, injunctions, and rulings in connection with this proceeding; and

L.    To enter such orders that may be necessary or appropriate to aid in confirmation and to facilitate implementation of the Plan.

## ARTICLE XIII

## LIMITATION OF LIABILITY

13.1    The Debtor and Reorganized Debtor and all of their members, shareholders, directors, officers and agents, including their counsel, accountants, consultants and/or employees shall not be liable to the Debtor, Reorganized Debtor, any Creditor or Interest Holder of the Debtor or the Reorganized Debtor, or any other entity for any action taken or omitted to be taken in connection with their actions or duties in the Case or under this Plan.  The Bankruptcy Court shall have exclusive jurisdiction to resolve any questions concerning any such liability.

## ARTICLE XIV

## PROVISIONS REGARDING DISTRIBUTIONS

14.1    **Contested Claims**: Notwithstanding anything in this Plan to the contrary, neither the Debtor, nor the Reorganized Debtor shall be obligated to make any payments towards any Contested Claim.  Further, neither the Debtor nor the Reorganized Debtor shall be required to make any payments for an Allowed Claim to any Creditor if the Debtor, or the Reorganized Debtor have filed a motion,

objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with § 502(d) of the Code, provided, however, that the Reorganized Debtor shall escrow a sufficient amount to pay such Contested Claim in full, in the event that it is allowed.

14.2 **Delivery of Distributions**: Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Reorganized Debtor, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim or (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims if the Reorganized Debtor has not received a written notice of a change of address. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or similar legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Reorganized Debtor shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

14.3 **Allocation of Payments**: All distributions shall be allocated first to principle until the principle amount of the Claim is paid in full, next to interest if interest is allowed in relation to the Claim and finally, to fees, costs and expenses if such are allowed.

14.4 **Compliance with Tax Requirements and Allocations**: In connection with the Plan, to the extent applicable, the Reorganized Debtor shall be authorized to take all necessary or appropriate actions to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right, in its sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.

14.5 **Undeliverable Distributions and Non-Negotiated Checks**: If any distribution to a Holder of a Claim is returned as undeliverable, no further

distributions to such Holder of such Claim shall be made unless and until the Reorganized Debtor is notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty (120) days after the issuance of such check, the check shall be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Reorganized Debtor until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Reorganized Debtor free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim. This provision does not apply to the Office of the United States Trustee.

14.6 **Fractional Payments**: Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars. This provision does not apply to the Office of the United States Trustee.

14.7 **Interest and Penalties on Claims**. Unless otherwise specifically provide for in the Plan, the Confirmation Order or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

14.8 **Prepayment**: Any distribution required under this Plan may be prepaid without penalty, in whole or in part, in the sole and absolute discretion, of the Reorganized Debtor.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

15.1 **Authorization**: The Debtor and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably

requested by the other to memorialize and effectuate the terms and conditions of this Plan.

15.2 **Notices**: Any notice other than notice required pursuant to Article IV regarding treatment of Huntington National Bank required or permitted under this Plan shall be made in writing and served either by (i) certified mail, return receipt requested, postage prepaid; or (ii) overnight delivery service, freight prepaid, addressed to the following:

<div style="margin-left: 2em;">

If to the Debtor:            Crystal Fountain Chapel Funeral Home, LLC
Attn.: Elder Melvin Lewis
967 W. Michigan Ave.
Ypsilanti, MI 48197

With a copy to Debtor's counsel:
Stevenson & Bullock, P.L.C.
Attn.: Michael Stevenson
     Ernest M. Hassan, III
26100 American Drive, Suite 500
Southfield, MI 48034

</div>

15.3 **Binding Effect**: The Plan and the Confirmation Order will be binding upon, and will inure to the benefit of the Debtor, the holders of all Claims and Interests and their respective successors and assignees.

15.4 **Severability of Plan Provisions**: After the Effective Date, should any term or provision of this Plan be held by the Bankruptcy Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

15.5 **Successors and Assigns**: This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

15.6 **Compromise of Litigation**: The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action) available to the Debtor, the Estate, the Debtor-in Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

**Release of Liens:** The Debtor, Reorganized Debtor, and all parties-in interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgages, releases or terminations.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Ernest M. Hassan, III
Michael Stevenson (P37638)
Ernest M. Hassan, III (P67815)
Counsel for Debtors
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ehassan@sbplclaw.com

Dated: August 10, 2021

**Crystal Fountain Funeral Chapel Home, LLC**

By: /s/ Elder Melvin Lewis
Elder Melvin Lewis
Responsible Person for the Debtor

Dated: August 10, 2021

**EXHIBIT A**

**LIQUIDATION ANALYSIS**

# LIQUIDATION ANALYSIS

A.    Introduction

Under the "best interest of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest, who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interest of creditors" test, the Debtor has prepared the following hypothetical Liquidation Analysis. The Liquidation Analysis estimates potential case distribution to Holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of the Debtor's assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan.

**NOTE: The following are attached:**

**A (1) Liquidation Analysis for Crystal Fountain Chapel Funeral Home, LLC**

**A (2) Liquidation Analysis for James C. Lewis, Sr., LLC**

B.    Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of and hypothetical proceeds from the liquidation of the Debtor's assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in a Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information

in the Liquidation Analysis was not complied or examined by any independent accounts.

NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTAION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMTIONS REPRESENED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

      C.      Notes Applicable to the Liquidation Analysis

1. Appointment of a Chapter 7 Trustee

Pursuant to 11 U.S.C. 1129(a)(7)(A)(ii), the liquidation value, for purpose of the "best interest of creditors" assessment, is to be made as of the effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding the asset and liability base will not have significantly changed.

2. Liquidation Value

For the Debtor's interest in Assets, the liquidation value reduces the total amount by 6% which considers the presumed cost of sale and an estimate for fees of the Trustee's professionals.

3.Chapter 7 Trustee Fee

It is assumed that a Trustee will receive the sum of the proceeds as set forth under the liquidation value. The limitation on the Chapter 7 trustee's fees are contained in 11 U.S.C. 326. For purposes of the Liquidation Analysis, the chapter 7 trustee's fees are calculated using the limitation of section 326 of the Bankruptcy Code and are based upon equity in the property.

| | A(1) Liquidation Analysis for Crystal Fountain Chapel Funeral Home, LLC | |
|---|---|---|
| Description | | Total Amount |
| Total Property Value (See Attachment 1) | | $7,339.57 |
| Total Scheduled Secured Claims (See Attachment 1) | | $325,000.00 |
| Total Cost of Sale | | $440.00 |
| Est. Chapter 7 Admin Expenses | | $1,483.96 |
| Total Priority Claims (See Attachment 1) | | $300.00 |
| Available to General Unsecured | | -$319,884.39 |
| Total General Unsecured Claims (See Schedule E/F for Crystal Fountain Chapel Funeral Home, LLC) | | $145,327.99 |
| Percent Distribution | | 0.0% |

ATTACHEMENT 1 FOR CRYSTAL FOUNTIAN CHAPEL

FUNERAL HOME, LLC

## ASSETS

| Description | Amount |
|---|---|
| Checking Accounts | $1,929.57 |
| Misc. Office Equipment | $1,200.00 |
| Misc. Chemicals and Embalming Equipment | $4,200.00 |
| Contingent Interest in prepaid funeral services | $10.00 |
| | **Total Amount**<br>**$7,339.57** |

## CLAIMS

| Type of Claim | Amount |
|---|---|
| Scheduled Secured Claim of Huntington National Bank | $325,000.00 |
| IRS Priority claim pursuant to Proof of Claim 1-1 | $300.00 |

| | A(2) Liquidation Analysis for James C. Lewis, Sr. LLC | |
|---|---|---|
| Description | | Total Amount |
| Total Property Value (See Attached Schedule A/B) | | $140,000.00 |
| Total Scheduled Secured Claims (See Attached Schedule D) | | $325,000.00 |
| Total Cost of Sale | | $8,400.00 |
| Est. Chapter 7 Admin Expenses | | $10,500.00 |
| Total Priority Claims (See Attached Schedule E/F) | | 0 |
| Available to General Unsecured | | -$203,900.00 |
| Total General Unsecured Claims (See Schedule E/F for James C. Lewis, Sr. LLC) | | $248.327.99 |
| Percent Distribution | | 0.0% |

## ATTACHEMENT 2 FOR JAMES C. LEWIS SR., LLC

### ASSETS

| Description | Amount |
|---|---|
| Real Property located at 967 W. Michigan Avenue, Ypsilanti, MI 48197 | $140,000.00 (Value of real property pursuant to Schedule A/B for James C. Lewis Sr., LLC |
| | **Total Amount**<br>**$140,000.00** |

### CLAIMS

| Type of Claim | Amount |
|---|---|
| Scheduled Secured Claim of Huntington National Bank | $325,000.00 |

# EXHIBIT B

# PLAN PROJECTIONS

| | October | November | December | January | February | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues from Operation of Business | | | | | | | | | | | | |
| Assistance from Church | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Disbursements | | | | | | | | | | | | |
| Church Disbursements | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| Expenses for Independent Contractors | | | | | | | | | | | | |
| Officer Compensation | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Caskets, Vaults and Creamation | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 |
| Contractors | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Death Certificate Fees | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Insurance | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 |
| Automobile and Truck Expense | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Utilities | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Total Disbursements | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 |
| NET INCOME | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 |
| Administrative Expense Payments | $1,000.00 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000.00 | $1,000 | $1,000 |
| Article III, Class III Payments to Huntington's Secured Claim | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 |
| Article III, Class IV Payments (these payments to Allowed Unsecured Claims will be paid annually starting in years 4 and 5 of Plan. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Income | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 |

## Plan Year 2 (October 2022– September 2023)

| | October | November | December | January | February | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues from Operation of Business | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Assistance from Church | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| Disbursements | | | | | | | | | | | | |
| Officer Compensation | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Expenses for Independent Contractors | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Caskets, Vaults and Cremation | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 |
| Death Certificate Fees | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Insurance | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 |
| Automobile and Truck Expense | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Utilities | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Administrative Expense Payments | $1,000.00 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000.00 | $1,000 | $1,000 |
| Article III, Class III Payments to Huntington's Secured Claim | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 |
| Article III, Class IV Payments (these payments to Allowed Unsecured Claims will be paid annually starting in years 4 and 5 of Plan.) | | | | | | | | | | | | |
| Total Disbursements | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 |
| NET INCOME | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 |
| Net Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Plan Year 3 (October 2023 - September 2024)

| | October | November | December | January | Febuary | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues from Operation of Business | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Assistence from Chuch | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| Disbursements | | | | | | | | | | | | |
| Officer Compensation | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Expenses for Independent Contractors | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 |
| Caskets, Vaults and Creamation | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Death Certificate Fees | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Insurance | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 |
| Automobile and Truck Expense | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Utilities | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Total Disbursements | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 |
| NET INCOME | | | | | | | | | | | | |
| Administrative Expense Payments | $1,000.00 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000.00 | $1,000 | $1,000 |
| Article III, Class III Payments to Huntington's Secured Claim | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 | $3,179.57 |
| Article III, Class IV Payments (these payments to Allowed Unsecured Claims will be paid annually starting in years 4 and 5 of Plan. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Income | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 | $230.43 |

## Plan Year 4 (October 2024- September 2025)

| | October | November | December | January | February | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues from Operation of Business | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Disbursements | | | | | | | | | | | | |
| Officer Compensation | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Expenses for Independent Contractors | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Caskets, Vaults and Creamation | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 |
| Death Certificate Fees | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Insurance | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 |
| Automobile and Truck Expense | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Utilities | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Total Disbursements | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 |
| NET INCOME | | | | | | | | | | | | |
| Administrative Expense Payments | $1,000.00 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000.00 | $1,000 | $1,000 |
| Article III, Class III Payments to Huntington's Secured Claim | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Article III, Class IV Payments (these payments to Allowed Unsecured Claims will be paid annually starting in years 4 and 5 of Plan. | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $350 |
| Net Income | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $60.00 |

## Plan Year 5 (October 2025 – September 2026)

| | October | November | December | January | February | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues from Operation of Business | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Disbursements | | | | | | | | | | | | |
| Officer Compensation | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Rent | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Expenses for Independent Contractors | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Caskets, Vaults and Cremation | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 |
| Death Certificate Fees | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Insurance | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 | $240 |
| Automobile and Truck Expense | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Utilities | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Total Disbursements | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 | $3,090.00 |
| NET INCOME | | | | | | | | | | | | |
| Administrative Expense Payments | $1,000.00 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Article III, Class III Payments to Huntington's Secured Claim | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Article III, Class IV Payments (these payments to Allowed Unsecured Claims will be paid annually starting in years 4 and 5 of Plan. | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| | | | | | | | | | | | | $350 |
| Net Income | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $60.00 |

**EXHBIT C**

**ORDER ESTABLISHING DEADLINES AND PROECURES IN THE CASE OF A SMALL BUSINESS DEBTOR WHO HAS SELECTED TO HAVE SUBCHAPTER V OF CHAPTER 11 APPLY**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                              Case No. 21-44190-LSG

CRYSTAL FOUNTAIN CHAPEL
FUNERAL HOME, LLC,                                  Chapter 11 Proceeding

            Debtor.                                 Hon. Lisa S. Gretchko

_____/


ORDER ESTABLISHING DEADLINES AND PROCEDURES
IN THE CASE OF A SMALL BUSINESS DEBTOR WHO HAS ELECTED
TO HAVE SUBCHAPTER V OF CHAPTER 11 APPLY


        After reviewing the schedules and statement of financial affairs and consulting with the Debtor and the other parties who appeared at the status conference held on June 10, 2021, the Court concludes that this case is appropriate for the procedures set forth in this Order, and establishes the following deadlines, hearing dates and procedures. The purpose of this order is to expedite the Debtor's reorganization and to secure "the just, speedy, and inexpensive determination of [this] case . . . ." Fed. R. Bankr. P. 1001.


        1. Deadlines and Hearing Dates. The following deadlines and hearing dates are established:


        a. The deadline for the Debtor to file motions under ¶ 4 below is **July 9, 2021**. The deadline for the Debtor to file with the appropriate taxing authority all unfiled overdue tax returns, and serve copies of such tax returns upon (a) Kelley Callard, trial attorney with the Office of the United States Trustee; (b) Richardo Kilpatrick, the Subchapter V trustee, and (c) Michael Ryan, counsel for The Huntington National Bank, is **August 10, 2021**. This is the same deadline for the Debtor to file with the Court its 2020 Federal income tax return. All other documents required by 11 U.S.C. §§ 1116(1)(A) and 1187 must be filed with the Court by **July 1, 2021**. The case will not be delayed due to unfiled tax returns.

b.  The Court will hold the status conference required under 11 U.S.C. § 1188(a) on **July 9, 2021 at 1:00 p.m. by phone, and the parties should call (888) 684-8852 and use Access Code: 6874938#.** The Debtor, the attorney for the Debtor, and the Trustee must appear at the status conference. The United States Trustee and creditors are invited, but not required to attend.

c.  No later than **June 25, 2021**, the Debtor must file with the Court, and serve on the Trustee and all parties in interest, the report required by 11 U.S.C. § 1188(c).

d.  Under 11 U.S.C. § 1189(b), the deadline for the Debtor to file a plan (see ¶ 2 below) is **August 10, 2021**. Immediately after filing the plan, the Debtor must serve the plan, a ballot as appropriate, and this Order on the Trustee, the United States Trustee, all creditors, all equity security holders, and all other parties who have requested service, and the Debtor must promptly file proof of such service.

e.  The deadline to return ballots on the plan, as well as to file objections to confirmation of the plan, is **October 6, 2021**. Under Interim Rule 3017.2(d),[2] this is also the deadline for holders of claims and interests to accept or reject the plan. Under Interim Rule 3017.2(b), this is also the date on which an equity security holder or creditor whose claim is based on a security must be the holder of record of the security in order to be eligible to accept or reject the plan. The completed ballot form must be returned by mail to the Debtor's attorney: Stevenson & Bullock, P.L.C., Ernest Hassan, 26100 American Drive, Suite 500, Southfield, MI 48034.

f.  Under Interim Rule 3014, the Court fixes **October 6, 2021** as the deadline for any creditor to make an election of application of 11 U.S.C. § 1111(b)(2).

g.  No later than **October 12, 2021**, the Debtor must file a signed ballot summary indicating the ballot count under 11 U.S.C. § 1126(c) & (d). A copy of all ballots must be attached to this summary.

h.  The hearing on confirmation of the plan will be held on **Friday, October 15, 2021 at 1:00 p.m.**, in the Courtroom of the United States Bankruptcy Court, 211 West Fort Street, Detroit, Michigan 48226.

---

[2] In this Order, the citation to "Interim Rule __" is to one of rules in the "Interim Amendments to the Federal Rules of Bankruptcy Procedure" that were adopted by this Court in Administrative Order No. 2020-01, filed February 3, 2020. A copy of that administrative order and the Interim Rules may be found on this Court's website.

i. The deadline for all professionals to file final fee applications (see ¶ 5 below) is 30 days after the confirmation order is entered.

j. The deadline to file objections to this Order (see ¶ 6 below) is 21 days after this Order is entered.

k. The deadline for the Debtor to file a motion to extend the deadline to file a plan (see ¶ 8 below) is **July 9, 2021**.

l. The deadline to file a motion to extend the time to file a motion to assume or reject a lease under 11 U.S.C. § 365(d)(4) is **August 10, 2021**. Counsel for the Debtor must consult with the courtroom deputy to assure that such a motion is set for hearing before **September 3, 2021**.

m. These dates and deadlines are subject to change upon notice if the Debtor files a plan before the deadline in paragraph d above.

2.    The Plan.    The Debtor must begin to negotiate the terms of a plan of reorganization as soon as practicable. By the deadline established in paragraph 1d, the Debtor must file a plan of reorganization. If the Debtor fails to meet this deadline, the case may be dismissed or converted to Chapter 7 pursuant to 11 U.S.C. § 1112(b)(4).

3.    The Confirmation Hearing.    Parties may file objections to confirmation of the plan by the deadline established in paragraph 1e above. Objections must be served on the attorney for the Debtor, the Trustee, and the United States Trustee. A proof of such service must be filed with the objections. Objections which are not timely filed and served will be deemed waived.

4.    Expediting Debtor's Reorganization.    If necessary to file a plan by the deadline established in this Order, the Debtor must file any motions or requests to value security pursuant to L.B.R. 9014-1 by the deadline established in paragraph 1a above.

5.    Fee Applications.    Unless the Court orders otherwise, each professional may file one and only one final fee application. Such applications must be filed under L.B.R. 2016-1 and L.B.R. 9014-1 by the deadline set forth in paragraph 1i, above.

6.    Deadline to File Objections to this Order.    Any objection to this Order must be filed by the deadline set forth in paragraph 1j, above. Objections not timely filed are waived.

7.  Motions to Allow Administrative Expense.  Taxing authorities may file a request for payment of an administrative expense at any time under 11 U.S.C. § 503(a). Any request for an order allowing any such administrative expense, under 11 U.S.C. § 503(b), must be made under L.B.R. 9014-1.

8.  Motions to Extend the Deadline to File a Plan.  Any motion to extend the deadline to file a plan must be filed by the deadline in paragraph 1k.  The motion must demonstrate by affidavit or otherwise that the deadline extension is needed, and that the need for the deadline extension is attributable to circumstances for which the Debtor should not justly be held accountable.  *See* 11 U.S.C. § 1189(b).  The Court may schedule a hearing.  Counsel for the Debtor must serve the motion and any notice of the hearing on the Trustee, the United States Trustee, all secured creditors, and the 20 largest unsecured creditors, and must file a proof of service.

Signed on June 16, 2021



/s/ Lisa S. Gretchko
_____
Lisa S. Gretchko
United States Bankruptcy Judge

# EXHBIT D

# BALLOT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**In re:**

| | |
|---|---|
| **Crystal Fountain Chapel Funeral Home, LLC,**[1] | **Case No.:  21-44190-lsg** |
| **et al,** | **Chapter 11, Subchapter V** |
| **Debtors.** | **Hon. Lisa S. Gretchko** |
| | **Jointly Administered** |

_____/

## BALLOT FOR ACCEPTANCE OR REJECTION OF SUCHAPTER V PLAN OF REORGANIZATION FOR CRYSTAL FOUNTAIN CHAPEL FUNERAL HOME, LLC

The Debtor filed a plan of reorganization dated August 10, 2021 (the 'Plan") in this case. The Plan provides information to assist you in deciding how to vote your ballot. If you do not have a copy of the Plan, you may obtain a copy from Debtor's counsel Ernest M. Hassan, III, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 -248-354-7906 - ehassan@sbplclaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the plan and your classification and treatment under the Plan. If you hold claims or equity interests in more than one class, identify each class, amount of claim and acceptance or rejection separately. If you require additional ballots, you may obtain them from Debtor's counsel Ernest M. Hassan, III, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 -248-354-7906 -ehassan@sbplclaw.com.

If your ballot is not received by Ernest M. Hassan, III, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 on or before October 6, 2021 and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.

To have your vote count, you must complete and return this ballot to:
ERNEST M. HASSAN, III

---

[1] The Debtors in these jointly administered proceedings along with the last four digits of its federal tax id number are: James C. Lewis, Sr., LLC (1169)( Case No: 21-44189-lsg) and Crystal Fountain Chapel Funeral Home, LLC (0953)( Case No: 21-44190-lsg).

STEVENSON & BULLOCK P.LC.
26100 AMERICAN DRIVE, SUITE 500
SOUTHFIELD, MICHIGAN 48034

NAME OF CREDITOR _____

TYPE OF CLAIM (Check one)

| CLASS I | |
|---------|--|
| CLASS II | |
| CLASS III | |

AMOUNT OF CLAIM          $_____

MARK ONE ONLY:          Accepts Plan          _____

                        Rejects Plan          _____


SIGNATURE: _____
TITLE (if not a natural person) _____

          ADDRESS _____
                  _____

DATED_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Crystal Fountain Chapel Funeral Home, LLC,[1] Case No.: 21-44190-lsg
et al,                                       Chapter 11, Subchapter V

    Debtors.                                Hon. Lisa S. Gretchko
                                            Jointly Administered

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of August, 2021, I filed electronically:

-Crystal Fountain Chapel Funeral Home, LLC's Subchapter V Plan of Reorganization
-Exhibit A Liquidation Analysis
-Exhibit B Plan Projections
-Exhibit C Order Establishing Deadlines and Procedures in the Case of a Small Business Debtor Who Has Selected to Have Subchapter V of Chapter 11 Apply
-Exhibit D Ballot
-Certificate of Service

with the Clerk of the Court using the ECF system who will give notice electronically of such filing to the following:

Office of the U.S. Trustee
211 W. Fort Street, Suite 700
Detroit, MI 48226

---

[1] The Debtors in these jointly administered proceedings along with the last four digits of its federal tax id number are: James C. Lewis, Sr., LLC (1169)( Case No: 21-44189-lsg) and Crystal Fountain Chapel Funeral Home, LLC (0953)( Case No: 21-44190-lsg).

Richardo I. Kilpatrick, Subchapter V Trustee
rkilpatrick@kaalaw.com

Kelly Callard on behalf of the United States
Trustee
Kelley.Callard@usdoj.gov

Michael J. Ryan on behalf of the Huntington National Bank
mryan@krslaw.biz

I also hereby certify that on August 10, 2021, I served via First Class Mail upon all parties listed on the court's matrix of creditors:

- Crystal Fountain Chapel Funeral Home, LLC's Subchapter V Plan of Reorganization
-Exhibit A Liquidation Analysis
-Exhibit B Plan Projections
-Exhibit C Order Establishing Deadlines and Procedures in the Case of a Small Business Debtor Who Has Selected to Have Subchapter V of Chapter 11 Apply
-Exhibit D Ballot

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Ernest M. Hassan, III (P67815)
Counsel for Debtor In Possession
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Email: ehassan@sbplclaw.com

Dated:   August 10, 2021